UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
:
CARLA P. DUNCAN, : CASE NO. 1:11-CV-2006
:
       Plaintiff-Appellant, :
: OPINION AND ORDER AND JUGMENT
v. :
: [Resolving Docs. Nos. 1, 6 & 11]
DEUTSCHE NATIONAL BANK :
TRUST COMPANY *et al.*, :
:
       Defendants-Appellees. :
:
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

    Carla P. Duncan appeals the bankruptcy court's decision abstaining from her adversary claims against Appellees Deutsche Bank National Trust Company (Deutsche Bank) and IndyMac Mortgage Services (IndyMac).[1] The appellees are creditors who have filed proofs of claim in her Chapter 13 bankruptcy. [Doc. 1]; *see* 28 U.S.C. 158(a). Because the bankruptcy court did not abuse its discretion when it declined to adjudicate Duncan's adversary complaints, this Court AFFIRMS the abstention.

I. Background

    On January 20, 2010, Deutsche Bank brought a foreclosure proceeding against Duncan's primary residence at 1068 Quilliams Road in Cleveland Heights, Ohio. [Doc. 11-1, at 10]. The Cuyahoga County Court of Common Pleas gave Duncan until May 3, 2010, to respond to the foreclosure complaint, but she missed the deadline by more than three weeks. [*Id.* at 6]. Accordingly, on September 2, 2010, the court struck both Duncan's answer and her counterclaims

---

[1] IndyMac Mortgage Services is a division of OneWest Bank, FSB. The Court refers to both entities, together, as "IndyMac."

-1-

Case No. 1:11-CV-2006
Gwin, J.

against Deutsche Bank and its loan servicer IndyMac. [*Id.* at 3].

Meanwhile, a second foreclosure proceeding was pending in state court against Duncan's rental property at 3918 East 120th Street in Cleveland. The parties have provided few details about this case, but Appellees' counsel represented to the bankruptcy court that Duncan successfully filed an answer and counterclaims in that state-court case. *See* [Doc. 10-2 at 4:23-5:6.]

On August 25, 2010, Deutsche Bank moved for a default judgment of foreclosure on Duncan's primary residence. Before the state court could hold a hearing on that motion, Duncan filed her bankruptcy petition in the United States Bankruptcy Court for the Northern District of Ohio. *See* [Doc. 11-1 at 2]; [Bankr. N.D. Ohio, No.10-20261, Doc. 1] Duncan's filing caused both state foreclosure actions to be stayed under 11 U.S.C. § 362(a).

Deutsche Bank and IndyMac responded by filing proofs of claim in Duncan's bankruptcy proceeding, *see* 11 U.S.C. § 501. Duncan, in turn, filed two adversary complaints against Deutsche Bank and IndyMac in the bankruptcy court. [Bankr. N.D. Ohio, No.11-1042, Doc. 1 (the personal residence) & No. 11-1043, Doc. 1 (the rental property).] Those adversary complaints asserted claims similar to the counterclaims Duncan had filed in her state-court rental-property foreclosure case and had unsuccessfully sought to file in her state-court primary-residence foreclosure case. Generally, Duncan alleged that Deutsche Bank and IndyMac violated federal and state law in handling her mortgages, and that their actions in servicing and attempting to enforce her debts gave rise to causes of action for damages. In particular, Duncan sought damages for alleged violations of state common law, the Fair Debt Collection Practices Act (FDCPA), the Real Estate Settlement Procedures Act (RESPA), and the Ohio Consumer Sales Protection Act. *Id*. In addition, Duncan asked the bankruptcy court to find that her debt on the rental-property was unsecured to the extent that it

Case No. 1:11-CV-2006
Gwin, J.

exceeded the value of the property itself. [Bankr. N.D. Ohio, No. 11-1043, Doc. 1, at 18-19.] Deutsche Bank and IndyMac jointly moved the bankruptcy court to dismiss or abstain from hearing Duncan's adversary complaints. [Bankr. N.D. Ohio, No. 11-1042, Doc. 24]

On August 18, 2011, the bankruptcy court held a hearing on the motion to dismiss. [Doc. 11-2] Although the adversary complaints requested only damages (save a pro forma prayer for "such other and further relief as the Court may deem just and proper," [Bankr. N.D. Ohio, No.11-1042, Doc. 1, at 14]), the hearing focused almost exclusively on whether the liens were validly assigned. Duncan's complaints never spoke to this issue.

The bankruptcy court ultimately abstained from exercising jurisdiction over any part of Duncan's adversary proceedings. [Doc. 11-2, at 18-19]; 28 U.S.C. § 1334(c)(1) (permitting abstention "in the interest of comity with State courts or respect for State law"). The bankruptcy court found that state-law issues predominated and that the complaints' claims could be resolved in state court. *See* [Bankr N.D. Ohio, No. 11-1042, Doc. 40.] This appeal followed.

II.  Analysis

Duncan puts forth two claims of error by the bankruptcy court. First, she claims that the bankruptcy court improperly determined that the adversary complaints were not core proceedings. And second, she claims that the bankruptcy court's decision to abstain was premised on this improper determination. Each claim of error is addressed in turn.

A.  The Claims as Core Proceedings

At the outset, it is important to determine exactly what Duncan asks this Court to review. Duncan originally raised eight claims in her personal residence complaint and fourteen claims in her

Case No. 1:11-CV-2006
Gwin, J.

rental property complaint.[2/] She contends that the bankruptcy court determined that all of her claims are non-core proceedings. [Doc. 6 at 11.] As previously mentioned, this is incorrect—the bankruptcy court agreed that the fourteenth claim in the rental property complaint is a core proceeding. [Doc. 11-2 at 17.] Of the remaining twenty-one claims (all eight from the personal residence complaint and thirteen from the rental property complaint), her briefing on appeal addresses *only* the FDCPA claims of each complaint. Therefore, this Court need not reach the question of whether the other nineteen claims were properly deemed non-core proceedings.

This Court reviews *de novo* a bankruptcy court's determination as to whether an adversary claim is a core proceeding. *Hughes-Bechtol, Inc. v. Construction Mgmt., Inc.*, 144 B.R. 755, 756. (S.D. Ohio 1992). The claims raised in the complaints before the bankruptcy judge differ dramatically from those raised on appeal, though they are shrouded in similar language. Before the bankruptcy judge, Duncan's FDCPA claims focus exclusively on the method of debt collection. [Bankr. N.D. Ohio, No. 11-1042, Doc. 1, at 7; No. 11-1043, Doc. 1, at 7.] On appeal, the FDCPA claims focus on whether the negotiation of Duncan's note was proper, and whether the Defendants are proper owners of the note. Effectively, Duncan complained in the bankruptcy court about *how* the Defendants attempted to collect, whereas on appeal she complains about *if* the Defendants may collect at all.

Perhaps anticipating this concern, Duncan speaks to this issue in her briefing on appeal. She contends that the complaints' recitation of certain statutory elements triggers adjudication of the

---

[2/]Duncan's personal residence complaint only alleged eight claims against the Defendants, even though the last claim is "Count Nine." [Bankr. N.D. Ohio, No. 11-1042, Doc. 1, at 13.] The Claims are misnumbered, and skip Count Seven in that complaint. For clarity purposes, this Court will refer to the claims as numbered in the bankruptcy court's complaints.

Case No. 1:11-CV-2006
Gwin, J.

validity of the Bank's liens and debts. [Doc. 6, at 11 (citing 28 U.S.C. § 157(b)(2)(K) & (b)(2)(I)).] But invoking a statute does not state a claim, for a complaint must include factual allegations that specify the statute's applicability. While Duncan is correct that an FDCPA claim can be founded on the allegations raised in her briefing on appeal, *see Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012), this does not mean that every FDCPA claim implicitly incorporates such an allegation. Duncan's current arguments about the complaints' core status lack merit as they do not relate to any adequately pleaded claims in this matter. *See Bryant v. Wells Fargo Bank*, No. 5:10-CV-237-D, 2012 WL 928435, at *4 (E.D.N.C. Mar. 19, 2012) (adopting bankruptcy court's recommendation to dismiss a claim because the argument raised on appeal "cannot be found in the amended complaint's vague FDCPA claim"); *cf. In re John Richards Homes Bldg. Co. LLC*, 405 B.R. 192, 229 (E.D. Mich. 2009) ("Arguments . . . that are woefully underdeveloped are deemed waived.").

This, then, leaves us with a claim of error with nothing to review. Of the twenty-two claims, Duncan purports to request review of twenty-one of them. Her briefing, however, only discusses two of the twenty-one claims. And those two claims were not properly before the bankruptcy court to begin with. But even if this Court were to undertake an individualized de novo analysis of every claim pleaded in the original complaints, the result would be the same.

Courts have applied the label "noncore" to causes of action with the following traits:

(1) is not specifically identified as a core proceeding under § 157(b)(2)(B)–(N);
(2) existed prior to the filing of the bankruptcy case,
(3) would continue to exist independent of the provisions of Title 11, and,
(4) in which the parties['] rights, obligations or both are not significantly affected as a result of the filing of the bankruptcy case.

*Matter of Walton*, 104 B.R. 861, 864 (Bankr. S.D. Ohio 1988). Of the twenty-one claims deemed

Case No. 1:11-CV-2006
Gwin, J.

non-core by the bankruptcy court, eighteen are purely state-law claims that existed prior to the filing of the bankruptcy petition, are independent of the provisions of Title 11, and are unaffected by the debtor's bankruptcy status. Of the three remaining federal claims—the two FDCPA claims and a RESPA claim—further inspection belies Duncan's contention.[3/] As previously discussed, the FDCPA claims have nothing to do with the bankruptcy petition and everything to do with a private right of action to contest unlawful debt collection practices. Likewise, the RESPA claim alleges a failure to abide by federal regulations requiring the conduction of an investigation if the parties disagree as to mortgage-related fees. Resolution of those claims would be of no assistance in the orderly distribution of the estate's assets. The bankruptcy court correctly assessed that all but one of the claims alleged in the complaints are non-core proceedings.

B. The Bankruptcy Court's Abstention

This Court reviews a bankruptcy court's decision to abstain from an adversary proceeding under 28 U.S.C. § 1334(c)(1) for an abuse of discretion. *McDaniel v. ABN Amro Mortgage Group, 364 B.R. 644, 650 (S.D. Ohio 2007)*. An abuse of discretion occurs when this Court is left with a definite and firm conviction that the bankruptcy court improperly applied the law, used an erroneous standard, or "committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Id.*

A bankruptcy court may abstain from an adversary proceeding if doing so is "in the interest of justice, or in the interest of comity with State courts or respect for State law . . . ." 28 U.S.C.

---

[3/]Duncan contends in her briefing on appeal that this Court ought to reclassify her FDCPA claims as core because they are premised upon a violation of federal law. [Doc. 6, at 15.] But, a claim is not a core proceeding simply because it is federal in character, nor is it a non-core proceeding because it is premised on state law. Rather, a core proceeding is one "that arise[s] in a bankruptcy case or under Title 11. The detailed list of core proceedings in § 157(b)(2) provides courts with ready examples of such matters." *Stern v. Marshall*, 131 S. Ct. 2594, 2605 (2011).

Case No. 1:11-CV-2006
Gwin, J.

§ 1334(c)(1); *see also* Matter of Tremaine, 188 B.R. 380, 384 (Bankr. S.D. Ohio 1995) (permitting "a bankruptcy court to exercise its discretion to abstain in favor of another court in certain circumstances"). "Abstention . . . is an extraordinary and narrow exception to the duty of a . . . [c]ourt to adjudicate a controversy properly before it." Hughes-Bechtol, Inc., 107 B.R. at 559 (quoting Col. River Water Conserv. Dist. v. United States, 424 U.S. 800, 813 (1976)). In determining whether permissive abstention under § 1334(c)(1) is proper, the following nonexclusive factors are considered:

> (1) the effect or lack of effect on the efficient administration of the estate if a court abstains;
> (2) the extent to which state law issues predominate over bankruptcy issues;
> (3) the difficulty or unsettled nature of the applicable state law;
> (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court;
> (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;
> (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
> (7) the substance rather than form of an asserted core proceeding;
> (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
> (9) the burden of [the bankruptcy] court's docket;
> (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
> (11) the existence of a right to a jury trial;
> (12) the presence in the proceeding of non-debtor parties; and
> (13) any unusual or other significant factors.

Mann v. Waste Mgmt. of Ohio, Inc., 253 B.R. 211, 214 (N.D. Ohio 2000); *see also* In re Weldon F. Stump & Co., 373 B.R. 823, 828 (Bankr. N.D. Ohio 2007). Mechanical consideration of each factor is less important than appropriate attention to the jurisdictional overlap between federal and state courts in the context of bankruptcy. *See* In re Weldon F. Stump & Co., 373 B.R. at 828 ("At their center, what these factors seek to do is to implement the function and purpose served by

Case No. 1:11-CV-2006
Gwin, J.

§ 1334(c)(1): in deference to federalism, ensure that the jurisdiction of the bankruptcy court is exercised only when appropriate to the expeditious disposition of bankruptcy cases.").

The bankruptcy court considered the factors articulated in *Mann* during its hearing on whether to abstain. Specifically, that court determined that "[s]tate law issues predominate over the bankruptcy issues," that "there are are apparently two related [s]tate [c]ourt proceedings that were started before the bankruptcy case was filed," that the "causes of action are capable of being separated from the main bankruptcy law," and that the remaining considerations are "either neutral or not applicable in this case." [Doc. 11-2, at 17-18.] That court also took into consideration that the vast majority of the claims raised by Duncan are non-core proceedings.

It is this last factor, and nothing else, upon which Duncan rests her appeal. Her second claim of error is entirely based on the alleged core/non-core error that this Court considered and rejected above. Duncan presents this Court with *no other argument* as to why it should be left with a definite and firm conviction that the bankruptcy court erred. Furthermore, this Court agrees with the statements made by the bankruptcy court during the hearing as to why permissive abstention was appropriate.

As a housekeeping matter, it bears noting that the core claim in Count Fourteen of the rental residence complaint is not, standing alone, an adversary proceeding. A proceeding to "determine the value of a claim secured by a lien on property" is a contested matter. *See* Fed. R. Bankr. P. 3012 and Advisory Committee Note; *Matter of Beard*, 112 B.R. 951, 955 (Bankr..N.D. Ind.1990) (unlike a direct attack on a lien, "the determination of secured status" is a contested matter, and need not give rise to an adversary proceeding); *see also In re Hudson*, 260 B.R. 421, 433 (Bankr. W.D. Mich. 2001) (for purposes of identifying an adversary proceeding under Rule 7001 of the Federal Rules

Case No. 1:11-CV-2006
Gwin, J.

of Bankruptcy Procedure, "[t]he 'extent' of a lien is not synonymous with the value of collateral; rather 'extent' relates to the identification of the scope of specific property which is subject of the lien"). *But see* Montano v. First Light Fed. Credit Union (*In re Montano*), 398 B.R. 47, 55 (Bankr. D.N.M. 2008) (adjudication is "not improper" when a contested matter is misclassified as an adversary proceeding). Count Fourteen asks the bankruptcy court to recast the portion of the mortgage lien that exceeds the home's value as unsecured debt. [Bankr. N.D. Ohio, No. 11-1043, Doc. 1, at 18-19.] Hence, while Count Fourteen survives as a contested matter, it does not sustain Duncan's adversary complaint. The bankruptcy court may still consider this objection to the rental residence's debts during its proceedings.

### III. Conclusion

The judgment of the bankruptcy court to abstain from the plaintiff-appellant's adversary proceedings is AFFIRMED.

IT IS SO ORDERED.


Dated: September 20, 2012            s/        *James S. Gwin*
                                     JAMES S. GWIN
                                     UNITED STATES DISTRICT JUDGE